FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★    DEC 1 5 2017    ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In re BLUE APRON HOLDINGS, INC.                :    **DECISION & ORDER**
SECURITIES LITIGATION                          :    17-CV-4846 (WFK) (PK)

                                               :

                                               :

-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

This is a putative class action brought against Blue Apron Holdings, Inc. ("Blue Apron" or the "Company") and certain of its directors and officers as well as several companies that acted as underwriters for the initial public offering ("IPO") of securities issued by Blue Apron (collectively, "Defendants"). *See* Compl., ECF No. 1. The Complaint alleges the Defendants made materially false and misleading statements in connection with the IPO, in violation of Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), 77o, and purports to bring claims on behalf of all those who purchased Blue Apron shares pursuant or traceable to the Registration Statement filed in connection with the Company's IPO. *See generally id.* Before the Court now are three competing motions for the appointment of lead plaintiff(s) brought pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(ii). For the reasons stated below, the Court appoints the Blue Apron Investor Group as lead plaintiffs and their attorneys—Pomerantz LLP and the Rosen Law Firm P.A.—as lead counsel.

## BACKGROUND

### I.    Procedural Background

The first complaint in this action was filed on August 17, 2017, by Rustem Nurlybayev ("Nurlybayev"). ECF No. 1. A parallel action, *Ivan v. Blue Apron Holdings, Inc. et al.*, 17-CV-5021 (E.D.N.Y.), was subsequently filed in this Court on August 25, 2017.[1] On October 16, 2017, three competing motions were submitted, each of which asked the Court to consolidate the *Nurlybayev* and *Ivan* actions, appoint the movant(s) as lead plaintiff, and designate lead counsel, all pursuant to the PSLRA. The three movants are: (1) Nurlybayev, ECF Nos. 20-22, 38, 44; (2) Gary Chute and Marcos Velasquez ("Chute and Velasquez"), ECF Nos. 23-25, 39-40, 45; and

---

[1] Another related action is also currently pending in the District of New Jersey. *Chaudhry v. Blue Apron Holdings, Inc. et al.*, 2:17-cv-6295 (D.N.J.).

1

(3) Cristina Davis, Sanzhar Khussainov, Stephen Waugh, and Susan Finkel (together, the "Blue Apron Investor Group"), ECF Nos. 26-28, 36-37, 43. On October 20, 2017, the Court entered an Order consolidating the *Nurlybayev* and *Ivan* actions and directing, *inter alia*, that documents filed in the consolidated action be captioned *In re Blue Apron Holdings, Inc. Securities Litigation.* ECF No. 29. The *Ivan* action was voluntarily dismissed on November 6, 2017. ECF No. 42. On December 1, 2017, the Court held oral argument on the motions and, on December 8, 2017, the movants submitted supplemental briefing. ECF Nos. 47-49.

## II.    The Movants

### A.    Nurlybayev

Movant Nurlybayev spent $105,640.00 on Blue Apron securities, Nurlybayev Mem. at 7, ECF No. 21, specifically 11,114 shares of common stock and 10 call options, *id.* at n.2, and suffered a loss of $45,735.54 as a result of Defendants' alleged misconduct, Nurlybayev Resp. at 2, ECF No. 44. Nurlybayev is represented by Wolf Haldenstein Adler Freeman & Herz LLP and Bottini & Bottini, Inc. Nurlybayev Mem. at 1, 9-10. On October 30, 2017, Nurlybayev filed a memorandum in which he indicated he supports the appointment of the Blue Apron Investor Group as lead plaintiffs, ECF No. 38, although he contends he should be appointed as the lead plaintiff if the Blue Apron Investor Group is not, Nurlybayev Resp. at 1.

### B.    Chute and Velasquez

Movants Chute and Velasquez lost $67,395.50 on transactions in Blue Apron securities made in connection with the IPO. Chute & Velasquez Mem. at 5, ECF No. 24; Ex. 3 to Rosenfeld Aff., ECF No. 25-3. Individually, Chute lost $30,353.50 and Velasquez lost $37,042.00 as a result of these transactions. *Id.* They are represented by Robbins Geller Rudman & Dowd LLP. *Id.* at 1.

2

### C.    The Blue Apron Investor Group

The Blue Apron Investor Group's financial interest in the outcome of the litigation is as follows: its members (1) purchased 21,400 shares of Blue Apron securities, (2) spent $206,360.00 on Blue Apron securities, (3) retained all of their shares, and (4) as a result of the disclosures of fraud, suffered approximately $83,964.00 in losses in connection with their purchases of Blue Apron securities traceable to the IPO.  Blue Apron Investor Group ("BAIG") Mem. at 7, ECF No. 27.  It is represented by Pomerantz LLP and the Rosen Law Firm P.A.  *Id* at 1.  The Blue Apron Investor Group also asserts that one of its members—Cristina Davis—has the largest individual loss of any individual before the Court, approximately $48,405.00.  BAIG Opp. at 3-4, ECF No. 36.

## LEGAL STANDARD

Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," which is referred to as the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA further directs the Court to "adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons" that: (1) "has either filed the complaint or made a [timely] motion" to be appointed as lead plaintiff(s); (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I).  This presumption can be rebutted by evidence that the presumptive most adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.*  With regard to the appointment of lead counsel, the PSLRA indicates that "[t]he most adequate plaintiff shall, subject to the

3

approval of the court, select and retain counsel to represent the class." *Id.* § 78u–4(a)(3)(B)(v). The Court addresses each of these requirements in turn.

ANALYSIS

**I.   Timely Filed Motions**

The PSLRA requires that the plaintiff who files the complaint publish a notice of the pendency of the action "[n]ot later than 20 days after the date on which the complaint is filed." 15 U.S.C. § 78u-4(a)(3)(A)(i)(I).  Thereafter, "any member of the purported class may move the court to serve as lead plaintiff of the purported class" within 60 days of the notice being published. *Id.* § 78u-4(a)(3)(A)(i)(II).  In this action, the statutory notice of pendency was published on August 17, 2017.  *See* Ex. 1 to Isquith Aff., ECF No. 22-1.  All of three of the motions were filed on October 16, 2017, which was the sixtieth day after August 17, 2017. Consequently, all of the movants timely filed their motions.

**II.   Largest Financial Interest in the Relief Sought by the Class**

The PSLRA does not explain how the Court should determine which of the movants has the largest financial interest in the relief sought by the class.  To make this determination, courts in the Second Circuit often refer to the so-called *Lax* factors, which require an analysis of "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (Boyle, M.J.) (citing *Lax v. First Merchants Acceptance Corp.*, 97-CV-27151997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); *see also, e.g., Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) (Buchwald, J.) (applying *Lax* factors); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (Sweet, J.) (same).  The fourth factor is generally considered to be the most

4

important. *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015) (McMahon, C.J.). As the parties do not argue that any of the *Lax* factors should weigh more heavily than the approximate losses suffered during the class period and, indeed, largely focus their arguments on those figures, the Court finds the losses suffered to be an appropriate proxy for the movants' overall financial interest in the litigation.

Consequently, and based on the representations made by counsel of record, the Court finds the Blue Apron Investor Group has the largest financial interest in the relief sought by the class, as its members reported the greatest losses suffered as a result of transactions arising out of the Blue Apron IPO and the Company's subsequent, allegedly fraudulent, disclosures. Specifically, the Blue Apron Investor Group reported losses of $83,964.00, whereas Chute and Velasquez reported losses of $67,395.50 and Nurlybayev reported a loss of $45,735.54.

## III. Rule 23

With regard to Rule 23, the movants need only make a preliminary showing that they would meet its typicality and adequacy requirements. *Khunt*, 102 F. Supp. 3d at 536. "Typicality is established where each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010) (Sweet, J.) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). All of the movants' claims arise out of the course of events alleged in the Complaint and do not differ with regard to how Defendants' liability would be proved. As none of the movants challenge each other on this point, the Court finds that all satisfy the typicality requirement of Rule 23.

"The adequacy requirement is satisfied where: 1) class counsel is qualified, experienced, and generally able to conduct the litigation; 2) the class members' interests are not antagonistic to one another; and 3) the class has sufficient interest in the outcome of the case to ensure

5

vigorous advocacy." *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003) (Conner, J.) (citations omitted). The parties do not dispute that all of the movants have significant interests in the outcome of the case that are not antagonistic to those of the class. Chute and Velasquez argue instead that the Blue Apron Investor Group is inadequate because it is a "lawyer-driven grouping" and did not submit a joint declaration as to its members' cohesion as a group until it filed its opposition. *See* Chute & Velasquez Reply at 2-3, ECF No. 45; *see also* Ex. A to Lieberman Decl., ECF No. 37-1 (BAIG Joint Declaration).

Although the PSLRA expressly permits groups of putative class members to be appointed as lead plaintiffs, 15 U.S.C. § 78u-4(a)(3)(B)(i), some courts have "turned away pastiche plaintiffs whose grouping appears to be solely a product of the litigation," *Khunt*, 102 F. Supp. 3d at 532. Others have indicated it is only appropriate to decline to appoint a group as lead plaintiffs "where the group is too large or where it has not evinced an ability (and a desire) to work collectively to manage the litigation." *Reimer v. Ambac Fin. Grp., Inc.*, 08-CV-1273, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (Buchwald, J.). This Court adheres to the "intermediate position" and will "permit[] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (Marrero, J.). "This logic eschews 'a hard-and-fast rule,' instead adopting a 'rule of reason.'" *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) (Brieant, J.) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001)). In determining the adequacy of a proposed group of plaintiffs, "courts have considered several factors, including (i) the size of the class; (ii) any evidence that the group was formed in bad faith, and (iii) the relationship between

the parties." *Barnet v. Elan Corp.*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (Holwell, J.) (internal citations omitted).

Here, Chute and Velasquez and the Blue Apron Investor Group are groups of two and four, respectively. Upon filing their motions, each prospective lead plaintiff submitted a certification in which she averred, *inter alia*, that she is willing to represent the putative class, that she is not being paid by class counsel to do so, and that, within the last three years, she had not served a class representative in a securities class action, as is required by the PSLRA. 15 U.S.C. § 78u-4(a)(2); *see* Ex. 2 to Rosenfeld Aff., ECF No. 25-2 (Chute & Velasquez Affidavits); Ex. B to Lieberman Decl., ECF No. 28-2 (BAIG Affidavits). At that time, Chute and Velasquez also submitted a joint declaration in which they indicated, *inter alia*, they were aware of the responsibilities of being lead plaintiff, they had previously discussed the role with counsel, and they were willing undertake those responsibilities. Ex. 4 to Rosenfeld Aff., ECF No. 25-2 (Chute & Velasquez Joint Declaration). The Blue Apron Investor Group subsequently submitted a substantially similar joint declaration in which it, *inter alia*, explained its members' interests in the current litigation, made clear it would be available to actively participate in the litigation, said its members had "agreed to seek appointment as Lead Plaintiff as a group prior to the filing" of their motion, and had previously held a conference regarding its members' and the class claims. Ex. A to Lieberman Decl. (BAIG Joint Declaration).

Putting aside Chute and Velasquez's arguments about the timing of this latter declaration, the only apparent distinction between the two groups is their size, as none of the proposed lead plaintiffs claim to have any relationship with one another beyond their participation in this litigation, much less a meaningful one. Consequently, they appear to be equally qualified to serve as lead plaintiffs on the basis of their representations to the Court, as neither group is so

large as to be unwieldly and impracticable, and each avers it is prepared to work cooperatively to serve the best interests of the class. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 99 (appointing five unrelated individual investors as lead plaintiffs where it would not "displace [an] institutional investor [as] preferred by the PSLRA"); *Barnet*, 236 F.R.D. at 162 (appointing group of six unrelated individual investors as lead plaintiffs); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (Batts, J.) (appointing group of seven as lead plaintiffs).

As noted, Chute and Velasquez contend the Blue Apron Investor Group failed to meet its burden as to adequacy by not submitting its joint declaration along with its initial motion. Although courts frequently require groups of plaintiffs to submit evidence on this point, *see Varghese*, 589 F. Supp. 2d at 392 (discussing evidentiary burden for group of unrelated plaintiffs), the PSLRA does not require that any such evidence be submitted with the initial motion, *cf.* 15 U.S.C. § 78u-4(a)(3)(B)(i). Accordingly, the Court will not penalize the Blue Apron Investor Group for filing a declaration only in its response papers. Where, as here, both declarations contain largely the same boilerplate affirmations of cohesiveness and cooperation, the timing of their submission is too thin a reed for this decision to turn on.[2] The Court therefore finds that the Blue Apron Investor Group is adequate to represent the putative class.

## IV.   Lead Counsel

Under the PSLRA, "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). As the Blue Apron Investor Group has the largest financial interest in the outcome of the matter and

---

[2] Although Chute and Velasquez point to elements of the Blue Apron Investor Group's submissions which can be viewed as suggesting the Group's members may be overstating their acquaintance, the Court will not assume without evidence that counsel of record are deliberately misleading it. For much the same reason, the Court declines to engage with counsel's more personal criticisms of one another, which are clearly based on previous experience that the Court has no independent knowledge or awareness of and do not tend to make either party seem more reliable or credible.

otherwise satisfies the requirements of the PSLRA and Rule 23, it is the presumptive most adequate plaintiff. Further, Chute and Velasquez have failed to rebut this presumption by presenting any credible evidence that the Blue Apron Investor Group "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The Court must therefore determine whether the counsel chosen by the Blue Apron Investor Group are "qualified, experienced, and generally able to conduct the litigation." *Weinberg*, 216 F.R.D. at 253. The Blue Apron Investor Group is represented by Pomerantz LLP and the Rosen Law Firm P.A. Both firms have submitted resumes indicating they have substantial experience in securities actions and have previously achieved a great deal of success in similar cases. Accordingly, the Court approves the selection.

## CONCLUSION

For the foregoing reasons, the Court appoints the Blue Apron Investor Group as lead plaintiff and Pomerantz LLP and the Rosen Law Firm P.A. as lead counsel. The Clerk of Court is requested to terminate the motions pending at ECF Nos. 20, 23, 26, and 49.

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 15, 2017
     Brooklyn, New York